UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JIMMY PAMPKIN, | ) |
| Petitioner, | ) |
| v. | ) Case No. 4:16-cv-00561-JCH |
| MICHAEL BOWERSOX, | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Jimmy Pampkin's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. (Petition, ECF No. 1.) Respondent has filed a Response (ECF No. 7), and the Petition is ready for disposition.

## BACKGROUND

On September 6, 2010, two men invaded the home of Harvey Butler, shot him, and stole his cash and his vehicle. Mr. Butler's stepson, Johannsen Rotellini, witnessed the event and provided descriptions of the assailants to law enforcement. Law enforcement subsequently found Mr. Butler's stolen vehicle and apprehended the driver, Marvin Williams. Mr. Williams was transported to the police station where he was questioned by Detective Michael Pratt. Mr. Williams explained to Detective Pratt that he had obtained the vehicle from "Big Moo" (later identified as Marquis Hardin), who had stated that he obtained the vehicle from "JD" and "Vloc." Based on Mr. Williams's statements, Detective Pratt entered the nicknames "JD and "Vloc" into a crime database and ascertained the identity of "JD" as Petitioner. Detective Pratt then prepared a photographic lineup from which Mr. Rotellini identified Petitioner, as did

1

Mr. Butler. Mr. Rotellini and Mr. Butler also identified Petitioner in a subsequent physical lineup.

On April 19, 2012, a jury in the Circuit Court of St. Louis City found Petitioner guilty of robbery in the first degree, assault in the first degree, and armed criminal action. The trial court sentenced Petitioner as a persistent felony offender to 40 years in prison. (Resp. Ex. 1.) Petitioner timely appealed, and on October 22, 2013, the Missouri Court of Appeals for the Eastern District affirmed Petitioner's conviction and sentence. *State v. Pampkin*, 411 S.W.3d 869 (Mo. Ct. App. 2013) (per curiam). On January 3, 2014, Petitioner moved for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. Petitioner was appointed counsel and he thereafter filed an amended Rule 29.15 motion, which was denied. On December 8, 2015, following an evidentiary hearing, the Missouri Court of Appeals affirmed the denial of post-conviction relief. The mandate issued on January 4, 2016. *Pampkin v. State*, 477 S.W.3d 688 (Mo. Ct. App. 2015) (per curiam).

In his Petition, Petitioner raises the following two grounds for relief:

(1) that the trial court erred in allowing Detective Pratt to testify, over defense counsel's objections, as to the statements Mr. Williams made tracing the stolen vehicle to Petitioner;

(2) that trial counsel was ineffective in failing to file a motion to suppress Mr. Butler's and Mr. Rotellini's out-of-court and in-court identifications as the products of suggestive line-up procedures.

(Petition at 5-6.) Petitioner exhausted his claims in the state courts, as he presented them respectively in his direct appeal and in his post-conviction motion. Petitioner is currently incarcerated at the South Central Correctional Center in Licking, Missouri.

**DISCUSSION**

"[A] district court shall entertain an application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "In the habeas setting, a federal court is bound by the [Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA')] to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254). Under the AEDPA, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citations omitted). If the state court's decision is not "contrary to" clearly established law, the remaining question is whether the state court's determination was "unreasonable." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012). This standard is "difficult to meet, and even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (quotation and citation omitted). "[A] state court's decision involves an unreasonable application of Supreme Court precedent when the state court identifies the correct governing legal rule from [the Supreme] Court's cases

but unreasonably applies it to the facts of the particular state prisoner's case, or either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Moore v. Purkett*, 275 F.3d 685, 688 (8th Cir. 2001) (quotations and citation omitted). "Federal habeas relief is warranted only when the refusal was objectively unreasonable, not when it was merely erroneous or incorrect." *Carter v. Kemna*, 255 F.3d 589, 592 (8th Cir. 2001) (quotation and citation omitted).

A state court's decision involves "an unreasonable determination of the facts in light of the evidence presented in the state court proceedings…only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Ryan v. Clarke*, 387 F.3d 785, 790-91 (8th Cir. 2004) (quotation and citations omitted). "[A] determination of a factual issue made by a State court shall be presumed to be correct," unless the petitioner rebuts the determination with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The presumption of correctness of findings of fact applies to the factual determinations made by a state court at either the trial or appellate levels. *See Smulls v. Roper*, 535 F.3d 853, 864-65 (8th Cir. 2008) (en banc).

**A. Ground 1**

In Ground 1, Petitioner asserts that the trial court erred in allowing Detective Pratt to testify, over defense counsel's objections, as to the statements Mr. Williams made tracing the stolen vehicle to Petitioner. At trial the State sought to introduce Detective Pratt's testimony that, upon questioning Mr. Williams, he "learned" the nicknames of two individuals who "may have been involved the robbery and assault." Defense counsel objected to Detective Pratt's testimony on the grounds that it constituted inadmissible double hearsay. In overruling defense

counsel's objection, the trial court determined that the testimony was offered to explain subsequent police conduct, and not for the truth of the matter asserted. (Resp. Ex. 1 at 535-544.) Petitioner argues that the trial court erred in overruling defense counsel's hearsay objection, and that Detective Pratt's testimony was admitted in violation of the Confrontation Clause. Petitioner raised this claim in his direct appeal.

In affirming Petitioner's sentence and conviction, the Missouri Court of Appeals stated as follows:

> Defendant acknowledges that out-of-court statements offered to explain subsequent police conduct aren't considered inadmissible hearsay and aren't precluded by the Confrontation Clause because they aren't offered to prove the truth of the matter asserted. State v. McGee, 284 S.W.3d 690, 701-702 (Mo. App. 2009). Defendant argues, however, that Pratt's testimony about Williams's statement went beyond this rule in that it directly connected Defendant to the crime. In McGee, this court cautioned that the police conduct exception to the hearsay rule is susceptible to abuse and so, particularly in cases where out-of-court statements directly implicate a defendant, the exception must be limited to ensure that such statements are admitted 'only to the extent they are necessary to explain the subsequent police conduct testified to at trial.' Id. at 702.
>
> Defendant insists that Williams's statement was unnecessarily detailed and that, instead, Pratt could have testified simply that he 'received information' prompting him to place Defendant's photo in a line-up. We fail to see how such an opaque account would have illuminated for the jury the evolution of Pratt's investigation and, most notably, how he was able to identify possible suspects—from nicknames, no less—by tracing the chain of possession of the stolen [vehicle]. Williams's statement was essential to understand Pratt's subsequent steps, and the trial transcript demonstrates that the court carefully considered the matter in that context. While conferring with counsel at sidebar, the court explained, 'I'm trying to determine how much of this goes to subsequent officer conduct and how much of it, no matter what you label it, is not going to that.' The court clearly recognized the danger of abuse described in McGee but ultimately accepted that the State sought only to explain Pratt's subsequent conduct, without regard to the truth of Williams's statement. We cannot say that the court erred or abused its discretion in arriving at that conclusion.

(Resp. Ex. 6 at 6-7.)

"[T]he right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him." *Pointer v. Texas*, 380 U.S. 400, 404 (1965). "The Confrontation Clause bars 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" *United States v. Spencer*, 592 F.3d 866, 878 (8th Cir. 2010) (quoting *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004)). However, the Supreme Court made clear in *Crawford* that the Confrontation Clause "is limited to hearsay evidence—that is, evidence offered to prove the truth of the matter asserted." *United States v. Holmes*, 620 F.3d 836, 841 (8th Cir. 2010). "Where an out-of-court statement is offered not for the truth of the matter asserted but rather to explain the reasons for or propriety of a police investigation, then it is not hearsay and does not implicate the Confrontation Clause." *See United States v. Shores*, 700 F.3d 366, 374 (8th Cir. 2012).

Upon review of the record, the Court finds that the state courts' rulings with regard to this claim comport with *Crawford* and its progeny, and that they were neither contrary to, nor unreasonable applications of, clearly established federal law, and were not based upon unreasonable determinations of fact. *See id.*; *United States v. Brooks*, 645 F.3d 971, 977 (8th Cir. 2011). Therefore, Ground 1 will be denied.[1]

## B. Ground 2

In Ground 2, Petitioner asserts that his trial counsel was ineffective in failing to file a motion to suppress Mr. Butler's and Mr. Rotellini's out-of-court and in-court identifications as the products of suggestive lineup procedures. Specifically, Petitioner argues that the pretrial

---

[1] To the extent that Petitioner challenges the trial court's application of Missouri's hearsay rule, the Court notes that "federal habeas corpus relief does not lie for errors of state law" and "it is not within the province of a federal habeas court to reexamine state-court determinations on state-law questions." *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

lineup was unnecessarily suggestive and unreliable because Petitioner was the only individual dressed in a collared shirt that resembled the shirt worn by the Mr. Butler's assailant, as described by Mr. Rotellini.  Petitioner contends that it is probable that the trial court would have sustained such a motion to suppress, and that the result of the trial would have been different. Petitioner raised this point in his Rule 29.15 motion for post-conviction relief.

In determining that Petitioner was not entitled post-conviction relief, the motion court noted trial counsel's testimony that he believed a motion to suppress would have been meritless, and that arguing the identification issue to the jury was a better strategy.  The Court of Appeals found that the motion court did not clearly err in its determination, reasoning as follows:

> Pampkin bears a heavy burden in attempting to satisfy the first prong of the <u>Strickland</u> test.  In order to do so, Pampkin must overcome the strong presumption that trial counsel provided competent representation and that trial counsel's conduct was reasonable and effective.  <u>Worthington v. State</u>, 166 S.W.3d 566, 573 (Mo. banc. 2005).  Missouri courts have consistently held that 'reasonable choices of trial strategy, no matter how ill-fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance.'  <u>Anderson v. State</u>, 196 S.W.3d 28, 33 (Mo. banc 2006).  In fact, 'strategic choices made after a thorough investigation of the law and the facts relevant to plausible opinions are virtually unchallengeable.'  <u>Id.</u>  As a result, defense counsel is afforded 'wide discretion in determining what strategy to use in defending his or her client.'  <u>Stevens v. State</u>, 353 S.W.3d 425, 431 (Mo. App. S.D. 2011).  The decision to file a motion to suppress is a matter of trial strategy. <u>Id.</u>  Further, counsel cannot be considered ineffective for failing to investigate and file meritless motions to suppress.  <u>Id.</u>
>
> At the evidentiary hearing, trial counsel explained his reasoning for not filing a motion to suppress identification.  Trial counsel stated that he did not file a motion to suppress because it would have been meritless and a 'long shot.'  Trial counsel explained that based on his experience and research, such motions are rarely granted.  In fact, trial counsel stated that to his knowledge, there was only one case 'in the history of the United States' involving a successful pretrial motion to suppress identification based on a suggestive lineup, and opined that such motions are 'very unsuccessful, especially in this jurisdiction and in Missouri.'  Trial counsel further explained that he did not want to lose credibility with the trial court by filing a motion he thought had no chance of prevailing and was not meritorious.  As a result, trial counsel testified that it is generally a much more successful strategy to argue the identification issue directly to the jury.  The

motion court found trial counsel's testimony credible and denied Pampkin's claim, noting that trial counsel "testified that there was no basis for" a motion to suppress identification.

The record before us demonstrates that trial counsel considered different options as to how to address the identification of Pampkin. Trial counsel presented a valid strategic reason at the evidentiary hearing for choosing not to file a motion to suppress. Trial counsel explained that such a motion had no chance of being successful and could potentially damage Pampkin's credibility before the trial court. Trial counsel believed that arguing the weaknesses of the identification directly to the jury was more likely to be successful. Trial counsel pursued this course of action at trial, arguing to the jury that Butler and Rotellini did not get a good look at the assailants and that their identifications of Pampkin were unreliable. We are mindful that the motion court determines the credibility of witnesses, and that on appeal, we defer to the motion court's determinations of credibility. Tate v. State, 461 S.W.3d 15, 24 (Mo. App. E.D. 2015). Trial counsel's credible testimony articulated a valid strategic reason for not filing a motion to suppress and established that his conduct fell well within the 'wide range of professional competent assistance.' Zink, 278 S.W.3d at 176. The motion court did not clearly err in reaching a similar conclusion.

Further, trial counsel's belief that a motion to suppress would have been without merit was reasonably premised upon Missouri case law and the information available to trial counsel. The test for the admission of identification testimony is two-pronged. The first prong asks whether the pretrial identification procedure was impermissibly suggestive. State v. Morgan, 2015 WL 1915184, at *2 (Mo. App. E.D. Apr. 28, 2015). 'A pretrial identification procedure is unduly suggestive if the identification results not from the witness's recall of first-hand observations, but rather from the procedures or actions employed by the police.' State v. Mullins, 340 S.W.3d 311, 314 (Mo. App. E.D. 2011). While reliability is the 'linchpin' in determining the admissibility of identification testimony, a defendant must 'clear the suggestiveness hurdle before procuring a reliability review.' State v. Thomas, 407 S.W.3d 190, 195 (Mo. App. E.D. 2013).

The only allegation of suggestiveness made by Pampkin was that he was wearing a collared shirt which was clearly distinguishable from the clothing worn by the other participants in the photographic lineup and was distinctly similar to the shirt worn by the suspect during the robbery. Pampkin did not allege, for example, that the police suggested or pressured either witness to identify Pampkin. Missouri courts have repeatedly held that 'a lineup will be deemed impermissibly suggestive on the basis of the color or characteristics of clothing only if the clothing is the *sole* basis for identification.' Morgan, 2015 WL 1915184, at *2; State v. Weaver, 912 S.W.2d 499, 520 (Mo. banc 1995).

The record contains no evidence, nor does Pampkin allege in his motion, that Butler or Rotellini based their identifications solely on the shirt Pampkin was

> wearing rather than their own observations of Pampkin's appearance. Rotellini testified that he noticed the clothing Pampkin was wearing in the lineup, and that the shirt Pampkin was wearing looked like the 'same checkered shirt' he saw. However, Rotellini also testified that he did *not* base his identification of Pampkin on the shirt alone. Rotellini stated that he identified Pampkin as one of Butler's assailants because '[i]t looks just like him,' and that he recognized Pampkin's face. Rotellini further testified that he got a five to ten second look at Pampkin's face during the robbery. Butler testified that he got a 'very good look' at Pampkin. He acknowledged that Pampkin was the only person in the photographic lineup wearing a blue and white shirt with a collar, but did not indicate that he attached any significance to the shirt or based his identification of Pampkin on the shirt.
>
> Given the lack of evidence suggesting that either witness based their identification of Pampkin solely upon his clothing, trial counsel had no meritorious basis for filing a motion to suppress identification based upon the suggestiveness of the photographic lineup. It is well settled that counsel is not ineffective for failing to investigate and file meritless motions, including motions to suppress. Stevens, 353 S.W.3d at 431. Point denied.

(Resp. Ex. 12 at 11-16.)

In order to prevail on an ineffective-assistance claim, a petitioner must demonstrate that counsel's performance was constitutionally deficient, and that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). The petitioner must first show that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 687-88. Review of counsel's performance by the Court is "highly deferential," and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 689, 690. The petitioner must then establish prejudice by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* When determining if prejudice exists, the court "must consider the totality of the evidence before the judge or jury." *Id.* at 695.

9

This Court finds that the state courts reasonably applied the principles of the *Strickland* framework in determining that Petitioner's trial attorney did not render ineffective assistance of counsel. Here, trial counsel testified at the Rule 29.15 evidentiary hearing that he believed a motion to suppress would have been meritless, and that arguing the identification issue to the jury was better trial strategy. In addition, during the trial Mr. Rotellini testified that he did not base his identification on Petitioner's shirt alone, and that he recognized Petitioner's face in the lineup. Mr. Butler also testified that he got "a very good look" at Petitioner's face. Thus, the Court agrees that trial counsel's decision not to file a motion to suppress was not objectively unreasonable. *See Palmer v. Clarke*, 408 F.3d 423, 435-36 (8th Cir. 2005) (even if photographic identification procedure is impermissibly suggestive, central question regarding eyewitness identification at trial is "whether, under the totality of the circumstances, the identification was reliable despite any suggestive or inappropriate pre-trial identification techniques"; factors court considers include level of certainty demonstrated by witness); *see also Griffin v. Delo*, 33 F.3d 895, 901 (8th Cir. 1994) ("When a claim for ineffective assistance of counsel is alleged on the basis of failing to…act, the reasonableness of the nonfeasance must be assessed in light of all circumstances, and a significant degree of deference given to counsel and his or her professional judgment."). In view of the foregoing, the Court concludes that the state courts did not issue a decision that was contrary to or an unreasonable application of federal law, and that they were not based upon unreasonable determinations of fact. Therefore, Ground 2 will be denied.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Jimmy Pampkin's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 1) is **DENIED**, and that his

claims are **DISMISSED with prejudice**. A separate Order of Dismissal will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997).

Dated this __7th__ Day of November, 2016.

/s/____Jean C. Hamilton_____
UNITED STATES DISTRICT JUDGE